Thank you, Your Honor. Good morning. John Desmond from the Jones Vargas Firm, along with my co-counsel Brian Irvine. I would like to reserve four minutes for rebuttal, if I could. Your Honor, I think the important focus in this case that all parties agree on in answering the questions before you is what law governs the fiduciary relationship between the parties. The district court judge expressly recognized this. If you look at the appellant's excerpt of record at page 34, she states in her order that the existence and scope of the fiduciary relationship is determined under California law. She then inexplicably goes on to analyze the Massachusetts law in fiduciary duty that was cited in the Chesterton case. When you look at California law in point, it is clear that California has never imposed a fiduciary duty on a minority shareholder. The seminal case in California on point is the 1969 California Supreme Court case of Amundson v. Jones. In that case, the Court talked extensively about fiduciary relationships between shareholders, but only in the context of the majority. That case is roughly 35 years old, and during the time since that case and that opinion was first issued, despite having many opportunities to do so, California has never imposed fiduciary duties on a minority shareholder. Counsel, is this a sufficiently important question? We ought to certify the question to California. I think the question is actually answered by California law, Your Honor. If you look at the 1983 California Court of Appeals case of Cook v. Lynch, which, again, involved a shareholder dispute, you had Cook, who was a 37 percent minority shareholder, who brought suit against two parties. I'm sorry. Lynch was a 37 percent shareholder. He brought suit against two other shareholders, Franklin and Charles Cook. Franklin Cook was a 4 percent shareholder. Lynch, in that case, tried to make an argument that the respective shares held by both Cooks should be viewed together so that under Amundson, you could, in essence, argue that they were constituted a majority of shares. The California Court of Appeals expressly refused to do so and held that Franklin, as a 4 percent shareholder, owed no fiduciary duty because of his minority interest. So I think in response to your question, California has answered the question in the affirmative. It is that, no, a minority shareholder does not owe a fiduciary duty to the majority or to the corporation under any circumstances. The district court thought, apparently, I assume thought that California law was to the contrary. Has any consideration been given to certifying the question to the Supreme Court of California? There has not, Your Honor, and frankly, I think for the reasons I just stated, because we believe that the question is sufficiently clear. Certainly, if the Court wanted to entertain certification of the question to the California Supreme Court, we think that the California Supreme Court would answer the question in the negative, that a minority shareholder does not owe a fiduciary duty to the majority in this circumstance or under any circumstances. But I think actually where the district court erred was in its analysis of Chesterton and Hunt as sort of the two cases dealing with this specific set of facts. But when you step back and look at the question, I think it was proper to decide the question within the framework of those cases, but you have to plug in the California law and fiduciary duties when doing so. Instead, if you look at the district court's decision, it's cited to Donahue, which is the 1975 Massachusetts case, talking about that in Massachusetts, a minority may owe a fiduciary duty in certain circumstances. I think the important thing about that case is it's applying Massachusetts law, so obviously it doesn't control this case. Even under those circumstances, the Donahue court in footnote 17 said that only in certain circumstances may a minority shareholder owe a fiduciary duty. So I think the important consideration is that you have to look at the fiduciary duties in the context of California law. We believe that the California courts have already answered the question and that is necessary, but if this court believes that there's an unanswered question there, I think certification would be appropriate. I think, too, when you look at other states and the similar conclusions that they've reached, all of those states have focused their analysis on what state law says in terms of the fiduciary relationship owed. There's the Follett case from Minnesota, the Johnson case from Wyoming. Even Delaware has refused to impose special shareholder duties in a closely held corporation where the parties did not create the duties themselves, either through a shareholder agreement or something in the bylaws or articles. I think a couple other considerations are important when you do look at Chesterton that distinguish it from this case. In Chesterton, he was actually not a true minority shareholder in that he held 28 percent of the outstanding shares of the corporation. So, really, in Chesterton you had a minority versus minority analysis where the court said applying Massachusetts law fiduciary duties, we believe the fiduciary duty may be owed. If you take the Cook versus Lynch case, which, again, was a minority versus minority dispute, the California court said we're not willing to impose a fiduciary duty in that setting. The question here is a minority versus majority. So I think if you look at Cook, there's no way that you can say that a minority would owe a fiduciary duty to the majority when Cook answered the minority versus minority question in the negative. I think another important consideration in Chesterton is that in terms of the S Corporation election and what occurred prior to the time that the parties made that, there was an actual discussion of the ups and downs of making the S election, including the fact that there would be a restriction on the transferability of shares. That was something that Chesterton himself participated in. In fact, he spearheaded the discussions on that issue prior to the time that the parties made their S election. If you look at the situation here, the two forms that they're relying on for saying that Peter consented to S election and thus implicitly agreed to a restriction on the transfer of his shares, they're relying on two one-page preprinted state and federal election forms, which in no way advise Peter of any restrictions that the majority sought to impose on the transferability of his shares. If, in fact, that was something that the majority had contemplated at the time it presented Peter with the S election, there should have been a discussion about it. It should have put that in a shareholder agreement in the articles or in the bylaws. Under the California Corporation's Code at Section 240A3, any restrictions on the transferability of shares actually have to be noted, both in the articles and the share certificate, which we know was not the case here. I think another important fact which distinguishes Chesterton from this case is the fact that the two corporations to which Chesterton sought to transfer his interest were two shell corporations that were wholly owned by him that had been created solely for the purpose of transferring his interest so as to defeat S status. In this situation, here we have a bona fide transaction with a third party with real economic substance. We're not talking about any sort of sham transaction as there was in Chesterton. I think the most important thing, though, that you take away from Chesterton is its reliance on Massachusetts law for fiduciary duties. And when you look at the district court's analysis on this case, I think that's where the error is, is that the district court was looking at Massachusetts law and fiduciary duties rather than going to the clear California law that suggests that a minority does not owe a fiduciary duty in this context. I think a couple other factors when you're looking at the Hunt and Chesterton cases that are important for your consideration. If you look at the Hunt case, the Kansas case, where in addressing Kansas law, the Kansas court refused to impose a fiduciary duty on the minority shareholder, just as in Hunt, where the court refused to impose a fiduciary duty because it looked at Kansas law and said we don't find that duty present on behalf of the minority, California answers the same question, that there is no fiduciary duty owed by the minority shareholder. I think another important consideration from Hunt is that in that case, the articles did not restrict the transferability of shares, just as in this case, there's no restrictions in the bylaws, the articles, or any shareholder agreement, the places where you might typically expect to see restrictions imposing any restrictions on the transferability of shares. And that fact was very important to the Kansas court in its analysis. I don't think under any circumstances can it be said that consent to the S election and by that, I think you need to bear in mind that's Peter's act of signing the two one-page preprinted forms that did not advise him in any way of restrictions on transferring shares. I don't think under any circumstances ---- The issue really isn't before us, is it? Well, it is in the sense that the district court found that that constituted informed consent or an implied contract not to transfer his shares. I understand. But if in fact we agree with you and reverse the summary judgments, there's a lot of issues left for the district court to resolve. It seems to me implied contract is one of them. I would agree with that, Your Honor. I would agree with that. I think my point is just that I think under the facts that were presented to the district court and the record, it was premature at best to say that there was an implied contract under the circumstances simply by Peter signing a preprinted form agreeing to S election that somehow that restricted him from having the ability to transfer his shares. So you agree that if we decide, as you propose, and vacate the two summary judgments and vacate the injunction, that this would have to go back for not only determination of what the California law is, but to develop some of these other issues, such as whether or not there was an implied contract, et cetera? Well, I think you could do that, Your Honor. I think you could also say that it's clear what California law is from Cook v. Lynch. And it's clear that no fiduciary duty is owed by the minority in this situation. Even if, assuming we do that, there would still need to be some issues that would be involved that would have to be resolved by the trial court. There would, Your Honor, including, I believe, the implied contract and informed consent issues. I understand. Thank you. But I don't think there's any California law that the district court pointed to or that exists that suggests that simply signing a preprinted form is tantamount to agreeing to a restriction on transferability of shares that was not contemplated by the parties at the time. And there's really no evidence in the record to support that either. Similarly, I think the argument that they've made that somehow Peter should be viewed as a controlling shareholder or that he has a controlling interest by virtue of the consequences of actions that he might take likewise fails. If you look at the California Corporations Code and what they speak of in terms of controlling shareholder, you look at the shareholder objectively within the corporation. Peter's a 1.1 percent shareholder. He's not an officer or director. He doesn't participate in the day-to-day management of the corporation. I think under any measure of control, it cannot be said that he has a controlling interest in the corporation under those circumstances. They're really looking at the consequences of an act that he might take, which under both Amundsen, where the court used essentially the term controlling shareholder interchangeably with majority shareholder, or the California Corporations Code, I think under either measure it can't be said that he's a controlling shareholder. I think importantly for the Court, if you're looking at the question under both Chesterton or Hunt, the first step would be to look at the California law on fiduciary duties. When you see that it's clear that those duties do not exist for the minority, that really is the end of the question in terms of the analysis. You can go through Chesterton and Hunt and distinguish those cases on a number of different grounds, but I believe that it's the state law fiduciary duty question that really carries the day here. One additional point on ‑‑ there's a number of commentators who we cite to in our brief who have criticized the Chesterton decision and say that courts should not be in the business of restricting or protecting a corporation's tax status for the benefit of majority shareholders simply because of poor planning by the majority. We take the position that the district court's order essentially creates a shareholder agreement for the benefit of the majority, which the parties never agreed to. The majority in this case was free to protect his own interests by placing an appropriate restriction in the bylaws or articles or in a shareholder agreement as is typically done when the majority wants to restrict the minority's ability to transfer shares. That didn't happen here, and I don't think that the Court can read it into the parties' agreement under the circumstances. And with that, I'd like to reserve my additional time for rebuttal. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the Court. I'm Joseph Weisman on behalf of Carl Merner and Merner Land Company. Your Honor, I'll endeavor to be brief. Unless the Court has specific questions, I'll sort of focus on a few points here. I think the Court should not lose sight of what this case is all about. What we feel the case is about, and I believe that Judge Wilkin understood, was this. Somebody agrees to do something, and it's just simply a matter of upholding what that individual agreed to do. In this case, Peter consented to the Subchapter S election. Counsel, do you equate consent with agreement? I do. Well, Judge Wilkins equated consent with agreement because she said that by virtue of Peter signing the Subchapter S election, he implied that he's going to do nothing to harm the corporation. And by selling his shares to Katamont, which is, as the Court, as we briefed, is a non-is an entity that would cause the Subchapter S to be destroyed, that is breaching a duty that Peter had that sprang from his consent to Subchapter S. What California case undergirds that ruling? I believe what undergirds the ruling is, is, in fact, the Amundsen case that Jones v. Amundsen that counsel recited to. But because Amundsen laid out the notion that there, in fact, is fiduciary duties in California corporation laws. Now, clearly, Amundsen dealt with the minority — excuse me, with the majority situation, but it didn't preclude the notion that a minority in a situation where the minority figuratively has a gun to the corporation's head, that Amundsen doesn't say that the fiduciary duty simply flows to the majority. Let me see if I understand. Maybe you can help me with this. California law applies, correct? Correct. And it was the responsibility of the district court to find out what California Supreme Court would do. Correct. California Supreme Court hasn't specifically said, so we have to determine what the Supreme Court of California would do. I have some difficulty with the opinion of Judge Wilken, and I want you to respond to this, that that is not what she did. At Excerpt 31, she says, The Court finds the reasoning of Chesterton more persuasive than that of Hunt. And then she said, Hunt would lead to substantial unfairness. And then finally, on 34, because there's no binding authority to the contrary, the holding of Chesterton is the most analogous and persuasive authority presented to the Court. It seems to me that Judge Wilken was saying, this is the Massachusetts rule is a better rule, and I'm going to apply that because of the better rule. But she's skipping a step. It isn't whether she thinks it's a better rule. It's whether the Supreme Court would think it's a better rule. And I don't see in her opinion that she's made that. I think she skipped that analysis. If that's true, then do we have to send it back to her to say, no, no, you don't make this decision based on what you think is the most persuasive rule. You have to decide what the Supreme Court would decide, the California Supreme Court would decide, if the California Supreme Court had that issue before it. Piotrowski, I agree that in her decision, she does not make that sequential move, as you point out. But I think it's implied, I think one can imply what she was trying to say. There is no California case directly on point. I believe that it's fair to say that she looked at Hunt, looked at Chesterton, and concluded that within the specific facts of our case, that Chesterton is a better rule. Now, certainly she did not, she did not in her decision say, I believe that if this question were before the California Supreme Court, the California Supreme Court would rule that Chesterton applies. But without having that in the decision, I don't think it's necessary to conclude that she missed the step. I think one can reasonably conclude that she looked at it as if she would, she was interpreting what the California Supreme Court would likely do in a similar situation. But I do concede that that step is missing in the decision. Kennedy, I have a problem with it. There's no analysis of the California cases. Now, as I read the California cases, they don't decide it, but they have a little footprint along the way. And it seemed to me the analysis had to start not with what she thought was the better rule, but what clues do we have in the California court that would inform our decision of what the Supreme Court would do? And, Your Honor, in terms of the footprints, if you look at the footprint that counsel cites in Lynch v. Cook for the proposition that California does not require a minority shareholder to have a fiduciary relationship with the majority, I think that's misplaced, because the difference in Lynch is Lynch was a situation where the parties were disputing about a tender offer. It was not a situation where the minority had a clear ability to dispute a bid, to destroy a benefit to the corporation that that minority shareholder consented to have exist. That may be true, counsel, but don't you think the Court should have, you know, expounded on that and why that case did not dictate a different result in this case? If I were drafted the decision, perhaps I'd be a little more clear with that, Your Honor, but unfortunately, I didn't. But you don't think that it harms your position that there's absolutely no discussion of any California case? I think there's no discussion of the California case because, Judge Wallace, and the difference, the reason perhaps she did not discuss the California case is because there's really nothing on point in California. In other words, there is no California case. And I spent yesterday with the leading treatise, Marsh on California corporations law, and in Marsh, it was not spelled out. I don't – I think there's some cases I found that were at least interesting in the California law that I would like to have her opinion on, the Stevenson case, the Byron case. Those have comments in them that could be argued one way or the other. But why don't we just substitute you for the district court and let you talk about those cases of why the opposition is wrong, that these cases don't lead to a determination that the California Supreme Court would determine there's no minority fiduciary duty? Your Honor, I'd be happy to do that. But I think the – my position on that is that the cases that you cite, and as I mentioned, the Lynch v. Cook, those are cases in which, as I mentioned a moment ago, the minority does not – did not have the kind of control. I'm not talking about control in terms of majority shareholder. I mean control with respect to taking an act that will have detrimental effect on the corporation. And here, the specific facts of the case here, which, if I can jump back to Chesterton where analogous in – analogous in Chesterton, you have a situation where Peter has this inordinate power as a minority to destroy the subchapter S. There was nothing to prevent Peter from selling his shares. It's about the only power he's got, isn't it? Certainly. And something that you could have contracted around. He could have contracted around that. Carl could have contracted around it. But simply in the absence of a shareholder agreement does not, therefore, mean that Peter can do anything to destroy the subchapter S. election. Peter had – he could have – nobody was restricting Peter from selling his shares to an entity that would not destroy the status. If he wanted to sell it to a third party, an individual, that wouldn't have been a problem. Likewise, Carl offered – The fact that Peter's share amount doesn't destroy the corporation, does it? It doesn't destroy the corporation, but it destroys a corporate benefit. Right. It's favorable tax status. Correct. And that, according to the excerpts of records, we have the declarations of the accountant, would have a substantial negative effect on the corporation. And had Peter simply sold the shares to an individual, we wouldn't be here because there wouldn't be an issue of the detriment to the subchapter S. Moreover, Carl has offered to purchase the shares for fair market value to be determined by a neutral arbiter. As a matter of fact, the – Peter's own accountants were able to review the books and records of the corporation to determine what that value would be. What does that have to do with whether or not there's a fiduciary duty of minorities? You're arguing merits. Let me take you back where we started. Let's go to Stevenson – the Stevenson case, Supreme Court case, Stevenson v. Drever. That was a CHC case. And the question, of course, didn't have anything to do with minority rights, but it had to do with majority rights. And there, the court said that it's going to treat them just like a public corporation. Well, in a public corporation, minorities don't have rights. So if the Supreme Court is going to follow its earlier determination that they're going to apply public corporation law to CHCs, isn't that some indication that they aren't going to find a minority fiduciary duty? Now, you're the district court now, and that argument has just been made by your adversary. How should the district court have handled that argument? The district court should have handled the argument by saying that simply because you have a California closed corporation or a closely held corporation, which Merner Land is, that if you're going to engraft the rules and regulations on a public corporation, that the minority in a closely held corporation can still take acts that may be so detrimental to the corporation, such as destroying a subchapter S election, that there is a heightened duty of the minority. And let me draw this analogy, if I may. I think, Judge Wallace, we're talking about a progression of the law. For example, the notion of a board of directors of a public corporation, its obligations to creditors. In the typical situation, the board of directors has no obligations to creditors. But as that corporation gets closer to the zone of bankruptcy or into bankruptcy or insolvency, suddenly the duties of the directors of the corporation change. They have a – the courts have held, as a matter of fact, Delaware has held, that in that situation, in the zone of bankruptcy, the boards of directors have a fiduciary obligation to creditors not to do anything to jeopardize the creditors' claims in bankruptcy. Likewise, here, we have a situation where Peter has this – this power, and although he is a minority and although, Judge Bybee, that's essentially the only power he has is to destroy the subchapter S, I suggest that that gives the minority a certain responsibility not to take an act that's going to detriment that very asset, if you will, the status, that the minority agreed to. Would that be true if this were a public corporation? No. I think the difference is that a public corporation, the – the shares are more freely traded. In a – in a closely held corporation, as the Court knows … Kennedy, so we have – we have the Supreme Court saying that they're going to apply public corporation law to a majority in Stevenson. Why – why would the Supreme Court then decide we're going to have a different rule than the public corporation law in dealing with a minority? Because I – because the distinction, Judge Wallace, is that even if the Court were to apply the public corporation law to a closely held corporation, when a shareholder is to do – if – pardon me – if a shareholder is to do something that is detrimental to the corporation, then I believe the California law would dictate that that would be stopped, that you simply can't take whatever act one wants to do as a minority, for example, to destroy a corporate asset. In a public corporation, you can't? In a public corporation, there is no – to my knowledge, there is no duty that the corporation. And I – you know, we're looking at a crystal ball. This is like going to Las Vegas. But we're trying to determine what would the Supreme – California Supreme Court do. They've gone this far applying public corporation law to CHCs, and I'm just wondering what your argument would be that they wouldn't apply public corporation law not only to majority, but to minority interests. Judge Wallace, the distinction I – I – again, you have well put point that we are gauging – gauging in the crystal ball situation, but I believe that when you have a – in a closely held corporation or a statutory closed corporation, I believe the Court would say that because it is unique, its structure is unique, these shares are not freely marketable, although we are going to impose the public corporation rules, there would be a distinction, in my view, if the minority was going to do something that was going to jeopardize the very – a very significant asset of the closely held corporation. Because other than the – other than its status as closely held, a closely held corporation's primary asset, if you will, is the fact that it has subchapter S status. Because with subchapter S status, there is a – there is one level of taxation which is – which is erased. Essentially, there is no double taxation. All the – all the profits and losses flowed down to the – to the holders, the shareholders, rather. So I believe that – that even though the California courts have – have suggested or have held that the – the public corporation laws would apply to a closely held corporation, I think there would be an exception when the minority was going to do something that would destroy the subchapter S or something akin to that. Is there any language in any of the California courts, either the Supreme Court or the California Court of Appeal, or any of the districts of the California Court of Appeal, that would help us with that analysis, that they'd make a distinction between having public law for the majority but have a different law for the minority? Your Honor, I have not seen that, other than the – the Stevenson case that you cited. But the language – the language in Jones v. Amundsen is – is important for both sides, because what Jones says is that, indeed, and Jones was speaking of the majority, indeed, there is a fiduciary duty here. And I think the – the – what's important in this case, and – and I don't want the Court to lose sight of this, is – is that Peter was not befret of any – of any remedies here. He could have filed suit as a shareholder, as something like a – a derivative suit, if he felt that Carl and the corporations were harming his interest. Peter could have filed suit in State court, asked for an accounting, and he could even, if he wanted to, file suit in State court to liquidate the corporation. Well, that's a fairly hard standard to meet. But he could have done that under, I think it's 1800s A of the California Corporations Code. One can do that. One as a minority can do that. So he was not simply left with no remedies. He – he had things – he could have done other things rather than – than propose the sale to Katamont, which would have destroyed the – the subjactor S election. And although Judge Wilken did not elaborate on what she opined the California Supreme Court would do, I think the analysis in Chesterson is appropriate here, because Chesterson is – is highly analogous to what – to what happened here in this case. But again, I think we are – we are left wondering, because we – there is no, unfortunately, absolutely clear case on this. Roberts. I would submit it unless there is any further questions. All right. Thank you, counsel. Thank you. The question has absolutely nothing to do with my – my opinion on this case. It will not influence me one way or the other. It's curiosity only. In the Northern District of California, they have a very aggressive mediation group. Was this case ever submitted to mediation? Yes, it was, Your Honor. We – we went through the district court ADR process, which was very helpful. But unfortunately, it – if I may, if I may have a moment. No, no, don't comment on it. No, no, I won't – I won't comment on it. I can't hear anything about how mediation went out. I'm just glad you used it, because I think it's a very valuable tool. Your Honor, there is a – there is an opportunity for the Court to resolve the case in the following way. And I want to – I have a moment or two left. And that would simply be to keep the permanent injunction in place and declare that the issue is moot, because the contract between Katamont and Peter has expired. And Peter has indicated in the declaration, which is in the excerpt, that he does not intend to sell to Katamont, nor does he intend to sell to any entity that would – that would destroy the Subchapter S election. Now, it may be moot. Perhaps the Court will determine that the issue is moot. Was that issue raised in your brief, counsel? It was not raised in the brief, Your Honor. It was raised by the – by counsel at the district court level to have the temporary restraining order lifted, but Judge Wilken concluded that there is the potential. There was nothing to prevent Peter from simply doing this again. And so she kept the injunction and granted the permanent injunction. All right. Thank you. Thank you. Rebuttal. Very briefly, Your Honor, just to dress in that last point. The reason that the case is not moot is Peter could not transfer his shares because he was subject to the terms of the permanent injunction. Katamont is ready, willing, and able to go forward with the transaction if permitted to do so, and Peter stands ready, willing, and able to sell his shares to them. So the only argument that can be made in that respect is Peter has been abided by the terms of the permanent injunction that is in place. And I would submit that in no way does that render this dispute moot in any respect. In terms of the progression of California law on fiduciary duty, I think California has answered the question before you. If you look at Amundsen, 1969, the California Supreme Court's talking about fiduciary duties in the majority context, we then get to the 1983 case, Cook v. Lynch, where they have the opportunity to say fiduciary duties should apply to the minority. It's the issue directly before the Court, and they declined to do so. And then up to 1997 with Stevenson, consistent with the 35 years of precedence since Amundsen, they refused to impose fiduciary duties on the minority. So I think we have a clear indication. Well, that wasn't the issue before the Court. The issue before the Court there was whether there's fiduciary duty on the majority. Correct, Your Honor. And they pointed out that they're going to use public law. That's as far as the Court went. Correct, Your Honor. But I think if you look at my point is from I think the 1983 case of Cook, of Lynch v. Cook, does answer the question, and I don't think anything has changed up until the time of Stevenson. And I think that Lynch v. Cook is an indication of how the Court would rule on that issue. In terms of all these cases, I don't really think that you can distinguish them by simply saying that they didn't involve the precise factual situation here involving an S-corp. They were all shareholder disputes. And in all of those cases, the courts were talking about the fiduciary duties owed between shareholders. So I think that is what's important for the Court's analysis, not precisely that they may have been involving an S-corp or the precise situation which is presented here. In terms of the district court's analysis, Judge Wallace, as you correctly point out, I just wanted to refer back to the record, an appellant's excerpt of record, page 34, which is page 5 of the district court's stay order.  I'm not looking at California law on this issue, which, in our opinion, is where the error was made, that you can use the framework of Chesterton or Hunt for the analysis, but you have to plug in the California law on fiduciary duty to answer the question, which we believe is clear. One other point that there's been reference to some fact-finding that was made by the district court is that the district court issued no findings of fact. In fact, she essentially just took the order from the initial request for injunctive relief and turned that into the permanent order on summary judgment. So there was no real fact-finding in terms of informed consent or implied contract or the question of whether by simply agreeing to the S election and signing the preprinted form that Peter actually entered into an agreement not to sell his shares or to abide by some restriction on transferring his shares. That factual record is simply not part of the record and not something that the district court did in this case. So in sum, I would just submit that we believe California law is clear that the minority shareholder does not owe the fiduciary duty in this context. And thank you very much. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes this calendar. This court for this session is adjourned. All rise. This court for this session is standing adjourned.
judges: Wallace, Rawlinson, Bybee